Commonwealth *v.* Howard, Appellant.

Argued March 13, 1967. Before ERVIN, P. J., WRIGHT, WATKINS, MONTGOMERY, JACOBS, HOFFMAN, and SPAULDING, JJ.

*Morrison B. Williams,* for appellant.

*Earl R. Doll,* Assistant District Attorney, with him *John F. Rauhauser, Jr.,* District Attorney, for Commonwealth, appellee.

OPINION BY JACOBS, J., June 16, 1967:

On November 24, 1958 Jesse Howard, the appellant, appeared before the Quarter Sessions Court of York County, signed a waiver of indictment by the grand jury and a waiver of counsel, entered guilty pleas to four district attorney's bills of indictment charging larceny and receiving stolen goods and was sentenced. At that time he was not represented by counsel.

On November 29, 1965 his petition for a writ of habeas corpus was granted by the Court of Common Pleas on the ground he had not intelligently and understandingly waived his constitutional right to counsel when he plead guilty in 1958. Following the grant of the writ, the court directed that new indictments covering the 1958 charges be presented to the grand jury. Appellant was indicted on December 16, 1965 and in January, 1966, after trial, he was found guilty on all four indictments and sentenced. At the 1966 trial appellant moved to quash the 1965 indictments on the ground that they were barred by the statute of limitations and later asked for a new trial on the same ground. The court below refused to quash the indictments and denied appellant's motion for a new trial.

In *Commonwealth v. Phillips,* 208 Pa. Superior Ct. 121, 220 A. 2d 345 (1966), aff'd, 424 Pa. 641, 226 A. 2d 863 (1967), we held that waiver of indictment by a grand jury is not a critical stage in criminal proceedings requiring the assistance of counsel and that the right to have a bill presented to the grand jury, a constitutional right in Pennsylvania, can be waived without counsel so long as the waiver is knowingly and intelligently made. In the *Phillips* case there were sufficient facts on the record to support a finding that the person accused had knowingly and intelligently waived the indictment. In this case no effort has been made, so far as the record discloses, to show an intelligent and understanding waiver of indictment by the appellant in 1958. Since the mere signing of statements on the back of the district attorney's bills does not justify us in finding that the appellant had waived his constitutional right knowingly and intelligently,[1] and since the lower court chose to direct the finding of new in-

---

[1] See *Commonwealth ex rel. Ross v. Botula,* 206 Pa. Superior Ct. 1, 211 A. 2d 42 (1965).

dictments, we must *assume* that the appellant did not intelligently and knowingly waive his right to indictment by a grand jury.

We must now decide what effect a district attorney's bill presented to court after a waiver of indictment, not knowingly and intelligently made, has on the running of the statute of limitations. We hold that it tolls the statute.

## I.

The statute of limitations on which the appellant relies is the Act of March 31, 1860, P. L. 427, §77, as amended by the Act of April 6, 1939, P. L. 17, §1, 19 P.S. §211. It reads, inter alia, as follows: "All indictments which shall hereafter be brought or exhibited for any crime or misdemeanor, murder and voluntary manslaughter excepted, shall be brought or exhibited within the time and limitation hereafter expressed, and not after; . . . all indictments and prosecutions for other felonies not named or excepted heretofore in this section, and for all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed. . . ." This statute has been construed to mean that the limitation is to be computed from the time a true bill is found by the grand jury. *Commonwealth v. Haas,* 57 Pa. 443 (1868). The crimes of larceny and receiving stolen goods with which the appellant was charged were felonies allegedly committed on November 3, 1958. Thus, had a true bill of indictment been returned within two years of November 3, 1958, this return would have stopped the running of the statute of limitations. See 1 Wharton, Criminal Law and Procedure, §184 (1957).

This defendant, however, elected to speed up the disposition of his case by invoking the Act of June 15,

1939, P. L. 400, §1, 19 P.S. 241. This provides that when any person is willing to waive an indictment by a grand jury and notifies the district attorney to that effect, "no bill of indictment charging such offense shall be sent to a grand jury; but the district attorney shall at once prepare a bill of indictment, in the usual form, and the plea of guilty or not guilty, as the case may be, shall, at the request of the said defendant or defendant's counsel be entered thereon. . . ." The bill is thereupon presented to the court for proper action in accordance with the plea entered thereon. This statute does not violate either our state or federal constitution, *Commonwealth ex rel. Stanton v. Francies,* 250 Pa. 496, 95 A. 527 (1915), *Commonwealth ex rel. Withers v. Ashe,* 350 Pa. 493, 39 A. 2d 610 (1944), and plainly permits the substitution of a district attorney's bill of indictment for indictment by a grand jury at the request of a defendant. Such procedure is the exhibiting of a bill against the accused in court and is a compliance with the statute of limitations that an indictment be "brought or exhibited" within the designated time. It stands in the place of a true bill and tolls the statute of limitations.

The argument is made that the statute of limitations is not tolled unless it is shown that the defendant knowingly and intelligently waived "his right to insist on the protection of the statute." The fallacy of this argument is demonstrated by an analysis of the nature and purpose of the statute of limitations. The most important purpose of a statute of limitations, so far as the accused is concerned, is to protect him from the burden of defending himself against charges of long-completed misconduct. See Note 102, U. Pa. L. Rev. 630, 632 (1954). This protection, unlike the right to counsel or the right to presentment before a grand jury, is not a matter of constitutional right but of legislative grace. *Commonwealth v. Duffy,* 96 Pa. 506

(1881) ; *Commonwealth v. Foster,* 111 Pa. Superior Ct. 451, 170 A. 691 (1934) ; 1 Wharton, Criminal Law and Procedure, §179 (1957). As was well expressed by our Supreme Court in *Commonwealth v. Duffy,* supra, at p. 514: "The state makes no *contract* with criminals, at the time of the passage of an act of limitation, that they shall have immunity from punishment if not prosecuted within the statutory period. Such enactments are measures of public policy only." We must not confuse constitutional rights with public policy considerations. In this case, informed twenty-one days after the alleged offense of the crime with which he was charged, at a time when the facts were still fresh in his memory and he was in an ideal position to prepare his defense, appellant entered a guilty plea. He did so after being informed of the crime as effectively as he would have been by a true bill. He did so at a time when he had no right to invoke the statute of limitations, two years not having elapsed from the date of the crime. Furthermore he did so at a time when he had no right to have the statute of limitations run in his favor. See *Commonwealth v. Phillips,* supra, at pp. 129-130.

Inasmuch as this guilty plea failed to meet constitutional requirements, it cannot stand. However, merely because the guilty plea was *constitutionally* deficient does not compel us to erase all the effects of a nonconstitutional nature which flowed from the defendant's actions on November 24, 1958. One of these effects of a nonconstitutional nature was to toll the statute of limitations. Where a step in the procedure has both constitutional and nonconstitutional ramifications, the requirements of constitutional waiver need not be applied to both. To grant appellant's request would result in freeing countless criminals who entered uncounselled guilty pleas even though they suffered no prejudice in regard to the statute of limita-

tions, and were granted a new trial with the assistance of counsel which supplied *all* the rights they were deprived of.

We hold that the statute of limitations was tolled on November 24, 1958 by the signing and filing of the district attorney's bill just as it would have been tolled had the grand jury returned a true bill. The statute did not run again in favor of the appellant until the indictment was inferentially set aside by the court on November 29, 1965 at which time it directed that the same bills be presented to a grand jury. New indictments on exactly the same set of facts were approved by the grand jury on December 16, 1965, again tolling the statute of limitations just eighteen days after it had again begun to run in favor of the appellant. When this is added to the twenty-one days before the statute was tolled in 1958, it is apparent that the two year statute does not bar prosecution of this appellant.

## II.

Appellant also argues that the 1965 indictment is fatally defective because on its face it is found more than two years after the commission of the offense and fails to allege that the appellant had not been an inhabitant or usual resident of this state at any time prior to indictment. This was the apparent holding of *Commonwealth v. Cody,* 191 Pa. Superior Ct. 354, 156 A. 2d 620 (1959), although an able dissent was filed by Judge WRIGHT in that case citing decisions of the Supreme Court and this court apparently contrary. However, we are satisfied that *Commonwealth v. Cody,* supra, is not controlling because the issue there was whether or not it was necessary to allege in the indictment the statutory exception provided for in the

statute of limitations[2] in order to make the defendant aware that he would be called upon to meet that allegation. Here the appellant is certainly aware of the reason for the date of the indictment and there is no chance that the Commonwealth will use the absence exception in the statute of limitations to the prejudice of an unprepared defendant. Thus *Commonwealth v. Cody,* supra, has no application.

Nor are we convinced by *Hattaway v. United States,* 304 F. 2d 5 (5th Cir. 1962), cited by appellant as authority for barring the second indictment. In that case the court, construing the word "indictment" in a federal statute which provides that a new indictment filed after the statute of limitations has run shall not be barred where a timely indictment has been dismissed, found that the indictment returned eight years after the crime was committed was the first indictment returned because the prior action was a waiver of indictment not permitted in that capital case. That is not the situation in our case where our legislature has authorized a substitute for grand jury indictment for crimes such as the ones involved here.

Judgment affirmed.

---

DISSENTING OPINION BY HOFFMAN, J.:

I cannot agree with the conclusion of the majority that the statute of limitations was tolled on November

---

[2] The Act of March 31, 1860, P. L. 427, §77, as amended by the Act of April 6, 1939, P. L. 17, §1, 19 P.S. §211, has the following proviso: "Provided however, That if the person against whom such indictment shall be brought or exhibited, shall not have been an inhabitant of this State, or usual resident therein, during the said respective terms for which he shall be subject and liable to prosecution as aforesaid, then such indictment shall or may be brought or exhibited against such person at any period within a similar space of time during which he shall be an inhabitant of, or usually resident within this State. . . ."

28, 1958, by the signing and filing of the district attorney's bill.

The majority states that the most important purpose of the statute of limitations is to protect the accused from the burden of defending himself against charges of long-completed misconduct. The statute assures that an accused will be informed of the nature of the charges against him while the facts are still fresh in his memory and he is in an ideal position to prepare his defense. In this I entirely concur. Yet, the majority's opinion today fails to fulfil this stated purpose.

The lower court found that appellant did not intelligently waive his constitutional right to counsel when he pleaded guilty in 1958. Our Court further assumes that he did not intelligently and knowingly waive his right to indictment by a grand jury and, therefore, his waiver was invalid. In short, his signing of the district attorney's bill was a mechanical act, performed without comprehension.

With this background in mind, I cannot understand how the majority can realistically argue that defendant was "informed" of the nature of the crime charged. To be "informed" presupposes an understanding which was concededly absent here. It was surely of no value to defendant that "the facts were still fresh in his memory and he was in an ideal position to prepare his defense," if he was not aware of his right or opportunity to prepare such a defense.

It is apparent to me that the district attorney's bill could not toll the statute, because its signing and filing did not, in any meaningful way, inform defendant of the charges against him or of the need of opportunity to prepare a defense. The avowed purpose of the statute, which is so carefully stated by the majority, was, in fact, never fulfilled.

What the majority is deciding today, in effect, is that the statute of limitations was tolled by defendant, because he unwittingly signed an invalid document which he did not understand in 1958.

The majority is apparently troubled by this result. To justify its conclusion, therefore, it seeks to shift the responsibility back to defendant. The court states: "This defendant, however, *elected* to speed up the disposition of his case by *invoking* the Act of June 15, 1939, P. L. 400, §1, 19 P.S. 241. This provides that when any person is *willing* to waive an indictment by a grand jury and notifies the district attorney to that effect. . . ." (Emphasis supplied.)

The Court thus suggests that the statute should be tolled, because defendant wilfully "elected" this waiver; he "invoked" this procedure; he was "willing" to waive indictment by the grand jury. Such language cannot be reconciled, however, with the earlier statement in the opinion that "we must assume that the appellant did not intelligently and knowingly waive his right to indictment by a grand jury." One who acted without knowledge or intelligence cannot be held to have "elected" or "invoked" the procedure which was followed.

This case must be distinguished from *Commonwealth v. Phillips,* 208 Pa. Superior Ct. 121, 220 A. 2d 345 (1966), aff'd, 424 Pa. 641, 226 A. 2d 863 (1967), in which our Court carefully pointed out that there were sufficient facts on the record to support a finding that the accused had knowingly and intelligently waived presentment. In that case, therefore, the court did not reach the issue of whether an invalid waiver could toll the statute.

In summary, the legislature has provided a statutory scheme whereby an accused must be informed of the charge against him within a specified period of

time, depending on the nature of the offense charged. In this case, the period was two years. The legislature has also provided that this statute of limitations may be tolled either by the grand jury's return of a true bill or by an accused's knowing and intelligent waiver of his right to have the bill presented.

In the instant case, neither of these statutory requirements were met. The majority, however, relies on the fact that the accused did sign a waiver in 1958, although he did not understand what he was doing, and holds that this act alone served to toll the statute. In my opinion, to determine that an unwitting act performed nine years ago denies defendant the protection of the statute of limitations today effectively subverts the purpose of that statute and substitutes our judgment for that of the legislature.

I would reverse the lower court and discharge the defendant.