Commonwealth, Appellant, *v.* Canada.

Argued June 22, 1971. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Joseph D. Grano,* Assistant District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *James D. Crawford,* Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellant.

*Cecil B. Moore,* for appellee.

OPINION BY HOFFMAN, J., September 21, 1971:

On August 3, 1967, appellee was indicted for offenses committed on March 14, 1967, on Bills Nos. 2772-2775, July Term, 1967. These indictments were, however, quashed by the Court of Common Pleas on October 27, 1969, on the authority of *Commonwealth v. Collemacine,* 429 Pa. 24, 239 A. 2d 296 (1968), in that neither appellee nor his counsel received prior notice that appellee's case would be presented to the grand jury which subsequently indicted him.

On February 4, 1970, appellee was reindicted for the above mentioned charges at Bills Nos. 35-38, February Term, 1970. On June 18, 1970, appellee, prior to the commencement of trial, pleaded the statute of limitations and moved to quash the indictments. The motion was granted and the Commonwealth appealed.

Both parties agree that the issue in this case is whether the running of the statute of limitations was tolled from the return of the bills of indictment in August 1967, until they were quashed in October 1969. If there was no such tolling the Commonwealth cannot now proceed since the Act of March 31, 1860, P. L. 427, §77, as amended, 19 P.S. §211, provides that the prosecution for the offenses charged in the instant case must be brought within two years of their commission.

It has long been the law of this Commonwealth that if a bill of indictment is found more than two years after the commission of the type of offense charged in the instant case, and the defendant has been a usual resident of Pennsylvania throughout that time, the bills may be quashed. *Commonwealth v. Cody,* 191 Pa. Superior Ct. 354, 156 A. 2d 620 (1959), *Commonwealth v. Werner,* 5 Pa. Superior Ct. 249 (1897) and cases cited therein.

The Commonwealth in the instant case, however, seeks to avoid the above rule by relying upon *Commonwealth v. Howard,* 210 Pa. Superior Ct. 284, 232 A. 2d 207 (1967) and *Commonwealth v. Smith,* 212 Pa. Superior Ct. 403, 244 A. 2d 787 (1968), which relied upon *Howard* for the proposition that the return of original bills of indictment against a defendant tolls the statute of limitations until such bills are quashed. *Howard,* however, cannot be so broadly read. In *Howard* the defendant signed a waiver of indictment by the grand jury and entered guilty pleas to four district attorney's bills of indictment. Seven years later he brought a petition for writ of habeas corpus alleging that he did not intelligently and understandingly waive his right to counsel when he plead guilty. The writ was granted and the lower court directed that new indictments covering the seven-year-old charges be presented. When these new indictments were presented the defendant moved to quash them as being defective since they were

returned after the statute of limitations had run. The lower court refused to quash and this Court affirmed that order.

We did so on two grounds. First, the submission of the district attorney's bills was done under color of the Act of June 15, 1939, P. L. 400, §1, 19 P.S. §241, which on its face provides that "no bill of indictment charging such offense shall be sent to a grand jury," where the proceedings is grounded on a district attorney's bill which "stands in the place of a true bill and tolls the statute of limitations." 210 Pa. Superior Ct. at 289, 232 A. 2d at 210. Necessary to the holding was our finding that "[t]his defendant, however, elected to speed up the disposition of his case by invoking the Act of June 15, 1939." Id. at 288-289. This election was not knowing and intelligent in a constitutional context, but with respect to any rights that the defendant in *Howard* had arising under the statute of limitations, it was valid. "[M]erely because the guilty plea was *constitutionally* deficient does not compel us to erase all the effects of a nonconstitutional nature which flowed from the defendant's actions (when he signed a waiver of indictment by the grand jury.)" Id. at 290. Thus the defendant in *Howard* was estopped from asserting the statute of limitations.

Second, the result reached in *Howard* can also be explained as being consistent with this Court's concern that any other result would have a disastrous effect. "To grant appellant's request would result in freeing countless criminals who entered uncounselled guilty pleas even though they suffered no prejudice in regard to the statute of limitations, and were granted a new trial with the assistance of counsel which supplied *all* the rights they were deprived of." Id. at 290-291.

Neither of the above considerations is apposite in the instant case. Here, the defendant did not do any affirmative act which would estop him from challeng-

ing the running of the statute of limitations. The defendant never consented to the defective return of the original bills of indictment. That was a purely unilateral act on the part of the Commonwealth. The Commonwealth has no authority under the Act of March 31, 1860, however, to unilaterally dispense with the right granted to the defendant to be indicted within the time limits set forth by such Act, except if the defendant consents to some such delay or in the alternative the statutory condition that the statute of limitations is tolled because of the defendant's absence from the jurisdiction is proved. *Commonwealth ex rel. Patterson v. Ashe,* 154 Pa. Superior Ct. 397, 36 A. 2d 249 (1944). This is true even where substantial extra-statutory justification is offered. For instance, in *Commonwealth v. DeMaria,* 110 Pa. Superior Ct. 292, 168 A. 320 (1933) we held that a court acting ex parte and without the consent of the accused may not toll the running of the statute of limitations by not convening a grand jury "because of the financial condition of (the county) and the fear of a shortage of its funds." Instead, we found that "at least not for the reason here assigned . . . the court of quarter sessions has not such power . . . (to) set aside the provisions, of an act of the General Assembly". 110 Pa. Superior Ct. at 294, 168 A. at 320.

Further, to sustain the lower court's quashing of the indictments in the instant case would not result in the freeing of "countless criminals". Instead, it would give incentive to the Commonwealth to ensure that all original returns of bills of indictment have been made in accordance with law so that such bills need not be quashed and prosecution delayed. As we stated in *Howard* "the most important purpose of a statute of limitations, so far as the accused is concerned, is to protect him from the burden of defending himself against charges of long-completed misconduct." 210 Pa.

Superior Ct. at 289, 232 A. 2d at 210.[1] This interest may only be justified in the instant case by affirming the order of the lower court.

The order of the lower court is affirmed.

WRIGHT, P. J., WATKINS, and JACOBS, JJ., dissent.

---

[1] See also *United States ex rel. Hassell v. Mathues*, 27 F. 2d 137 (E.D. Pa. 1928), wherein the court stated that "the right of protection (afforded a defendant by the statute of limitations) is not a mere procedural one, but is a substantive right."