Commonwealth *v.* Cardonick et al., Appellants.

Argued April 24, 1972. Before JONES, C. J., EAGEN,
O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Arnold Glaberson* and *Maier Segal,* with them *Rome and Glaberson, Ltd.,* for appellants.

*James D. Crawford,* Deputy District Attorney, with him *Milton M. Stein,* Assistant District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *Arlen Specter,* District Attorney, for Commonwealth, appellee.

*Cecil B. Moore,* for appellee.

OPINION BY MR. JUSTICE ROBERTS, June 28, 1972:

This consolidated appeal requires us to decide whether the return of indictments, subsequently quashed because of the failure to notify defendants which grand jury would consider the bills of indictment,[1] tolled the statute of limitations.[2] We conclude that the quashed indictments failed to toll the statute of limitations and the later bills, submitted and returned after the time period provided by the statute of limitations,[3] were

---

[1] See *Commonwealth v. Collemacine,* 429 Pa. 24, 239 A. 2d 296 (1968).

[2] Act of March 31, 1860, P. L. 427, §77, as amended, 19 P.S. §211.

[3] Appellants in Nos. 325-26 were charged with misdemeanors and summary offenses. The applicable statute provides a two-year period for all misdemeanors. Id. Appellants were charged with summary offenses under the Cigarette Tax Act, Act of July 8, 1957, P. L. 594, §707(a), as amended, 72 P.S. §3168.707(a), which provides a maximum penalty of $500 or 10 days imprisonment in default of payment. The Commonwealth has not questioned the applicability of the two-year statute of limitations for misdemeanors, see note 2 supra, to these summary offenses. We note, however, that the Cigarette Tax Act fails to provide a statute of limitations for these offenses. We cannot construe this omission to indicate that the Legislature intended the Commonwealth to have a longer period of time to prosecute these summary offenses than it has to return

properly quashed in No. 327, *Commonwealth v. Canada*,[4] and should have been quashed in Nos. 325-26, *Commonwealth v. Cardonick et al.* The facts of the two appeals are as follows:

## Nos. 325-26

Appellants, Leon Cardonick and Frank Toughill, were charged with numerous counts of forging cigarette tax stamps for tax evasion purposes, in violation of the Cigarette Tax Act, Act of July 8, 1957, P. L. 594, §§101 et seq., 72 P.S. §§3168-101 et seq.[5] and the Act of June 24, 1939, P. L. 872, §328, as amended, 18 P.S. §4328.[6] The alleged criminal acts occurred between February 9, 1965, and January 26, 1966. The prelimi-

indictments for felonies and misdemeanors which are of a more serious nature. The statute of limitations for other summary offenses is consistently shorter than two years. See, e.g., Act of December 15, 1959, P. L. 1779, §282, 30 P.S. §282 (violation of the fish laws—one year); Act of May 5, 1921, P. L. 389, §15, 76 P.S. §115 (violations of weights and measures law—one year); Act of April 29, 1959, P. L. 58, §1201, as amended, 75 P.S. §1201 (The Vehicle Code—30 days). Therefore, if the prosecutions are barred for the misdemeanors, it follows that they are barred for the summary offenses.

Appellee in No. 327 was charged with felonies none of which are specifically referred to in the statute; all felonies except for those specifically referred to in the statute are also subject to a two-year period of limitations. Id.

[4] We note that counsel for appellee in No. 327 has failed to submit a brief to the Court on behalf of his client in flagrant disregard of the Rules of this Court and his professional obligations to his client. No explanation or justification for this failure appears of record.

[5] The act in effect at the time of the alleged criminal acts in Nos. 325-26 has been repealed and replaced by the Cigarette Tax Acts of 1970. Act of July 22, 1970, P. L. 513, art. I et seq., §§101 et seq., 72 P.S. §§3169.101 et seq.

[6] Section 4328 involves "Falsification in matters within jurisdiction of state agencies."

nary hearing on these charges was held on April 4, 1967, and appellants were bound over for the grand jury.

The bills of indictment on these charges were presented to the July grand jury and indictments were returned on July 18, 1967. Appellants, however, were not notified that the bills of indictment would be presented to the July rather than the May or June grand juries.[7]

Appellants therefore moved to quash the indictments on the ground of lack of notice and the motion was granted on June 7, 1968. In order to exercise the constitutional right to challenge the "array of the grand jury or an individual juror", it is necessary to raise the challenge "before the grand jurors are sworn". Pa. R. Crim. P. 203; see *Commonwealth v. Dessus,* 423 Pa. 177, 224 A. 2d 188 (1966). Without advance notice of the specific grand jury which will consider the bills of indictment, it is of course impossible to satisfy Rule 203's requirement of advance challenge to the array. In *Commonwealth v. Collemacine,* 429 Pa. 24, 239 A. 2d 296 (1968), we affirmed the quashing of the indictments because of the failure to notify the defendant that the bill of indictment would be presented to a later grand jury than the one "to which he was handed over. . . ." Id. at 27, 239 A. 2d at 298.

The Commonwealth then gave appellants notice that the bills of indictment were to be re-submitted to the July 1968 grand jury. Appellants secured a rule to show cause why the attempt to re-indict them should not be barred by the statute of limitations. Appellants were charged with misdemeanors and summary offenses and the applicable statute of limitations is two years.[8]

---

[7] The committing magistrate concluded at the end of the preliminary hearing, "I am going to hold these . . . men . . . on the charge. . . ." The general practice is for the committing magistrate to bind defendants over to the next term of the grand jury. See, e.g., *Commonwealth v. Collemacine,* 429 Pa. 24, 239 A. 2d 296 (1968).

[8] See note 3 supra.

The last alleged act occurred on January 26, 1966, more than two years before the re-submission of the bills of indictment in July, 1968. Relief was denied and on July 30, 1968, the indictments were returned by the grand jury.

Appellants then moved to quash the indictments on the same basis—that they were returned beyond the two-year statute of limitations. The motion was denied on the ground that the original indictments, returned within the two-year period and quashed for lack of notice, tolled the statute of limitations. The motion to quash was renewed without success shortly before trial and in post-trial motions.

After a jury trial, appellants were found guilty on almost all of the indictments. Post-trial motions were filed and denied. Leon Cardonick was sentenced to ten concurrent terms of 11½ to 23 months imprisonment, 9 years probation and $30,000 in fines, and fourteen fines of $500 or 10 days imprisonment on the summary offenses. Frank Toughill was sentenced to ten concurrent terms of 6 to 23 months imprisonment, 9 years probation, and $30,000 in fines, and fourteen fines of $500 or 10 days imprisonment on the summary offenses. On appeal to the Superior Court, the judgments of sentence were affirmed in per curiam orders without opinion. *Commonwealth v. Cardonick*, 218 Pa. Superior Ct. 827 279 A. 2d 306 (1971); *Commonwealth v. Toughill*, 218 Pa. Superior Ct. 919, 279 A. 2d 212 (1971). We granted allocatur.[9]

---

[9] In granting allocatur, we specifically limited our review to the question whether the statute of limitations was tolled by the return of the first set of invalid indictments. We also permitted consideration of the question whether defendants in both cases were entitled to relief under *Commonwealth v. Collemacine*, 429 Pa. 24, 239 A. 2d 296 (1968). Neither defendants nor the Commonwealth dispute the trial court's conclusion that *Collemacine* applied to these cases.

No. 327

Appellee, Wilson Canada, was charged with possession of a firearm after conviction of a crime of violence, aggravated assault and battery, and assault and battery with intent to commit murder. The events on which these charges were based occurred on March 14, 1967. Appellee was bound over to the grand jury after a preliminary hearing on March 27, 1967. He was not notified that the bills of indictment were to be presented to the August rather than the April, May, June, or July grand juries.[10]

Canada moved to quash the indictments in 1969 on the ground of lack of notice, the basis for relief in *Commonwealth v. Collemacine*, supra. The motion was granted. The Commonwealth re-submitted the bills of indictment to the grand jury and indictments were returned on February 4, 1970. Another motion to quash was made and granted on the ground that the indictments were returned after the expiration of the two-year statute of limitations.[11] The Commonwealth appealed to the Superior Court which affirmed the quashing of the indictments in an opinion by Judge HOFFMAN with Judges WRIGHT, WATKINS and JACOBS dissenting. *Commonwealth v. Canada*, 219 Pa. Superior Ct. 407, 281 A. 2d 675 (1971). We granted allocatur.[12]

I

There is no question that in both cases, the second set of indictments was returned more than two years after the alleged crimes occurred, beyond the time period permitted by the statute of limitations.[13] Never-

10 See note 7 supra.
11 See note 3 supra.
12 See note 9 supra.
13 See note 3 supra.

theless, the Commonwealth argues that the return of the first set of indictments, although subsequently quashed, tolled the statute of limitations. Therefore, on their theory, in Nos. 325-26, the statute was tolled on July 18, 1967, only one and one half years after the last act charged, and would not begin to run again until June 7, 1968, when appellants Cardonick and Toughill quashed the indictments. In the Commonwealth's view, the return of new indictments on July 30, 1968, therefore would be well within the two-year period.[14] In No. 327, the Commonwealth likewise argues that the first indictments returned on August 3, 1967, only 6 months after the acts charged, tolled the statute which would not begin to run again until the indictments were quashed on October 27, 1969. Thus the Commonwealth argues that the subsequent indictments returned on February 4, 1970, would likewise be within the two-year period. We cannot accept these contentions.

The statute of limitations expressly requires that "all indictments and prosecutions for other felonies not

---

[14] Even under the Commonwealth's theory, prosecution should have been barred on those indictments charging criminal acts occurring before September 10, 1965. Appellants were not charged with a conspiracy which is viewed as a continuing offense for the purposes of the statute of limitations. *Commonwealth v. Kirk*, 141 Pa. Superior Ct. 123, 14 A. 2d 914 (1940), aff'd, 340 Pa. 346, 17 A. 2d 195 (1941). Therefore, the validity of each indictment must be measured for the purposes of the statute of limitations on the basis of the date of the acts charged therein. See 1 Wharton, Criminal Law and Procedure §§181-184 (Anderson ed. 1957). Taking into account the time period for which the statute was tolled under the Commonwealth's theory (July 18, 1967 to June 7, 1968), the two-year period ran between July 30, 1968, the date of the second set of indictments and September 10, 1965. All indictments charging offenses which occurred before September 10, 1965 are therefore invalid under the statute of limitations (Nos. 1773-79, 1787-93, 1795-98, 1806-08, July Sessions 1968).

named or excepted heretofore in this section, and . . . all misdemeanors, perjury excepted, shall be brought or exhibited within two years next after such felony or misdemeanor shall have been committed. . . ."[15] It is well established that "the return of an indictment or the filing of an information on which no valid conviction or judgment can be had will not operate to stop the running of the statute of limitations pending the return or filing of another indictment or information in the absence of a statute expressly so providing."[16] 1 Wharton, Criminal Law and Procedure, §184 at 427-28 (Anderson ed. 1957); *State v. Silver*, 239 Ore. 459, 463, 398 P. 2d 178, 179 (1965); *State v. Bilboa*, 38 Idaho 92, 222 P. 785 (1923); *State v. Disbrow*, 130 Iowa 19, 106 N.W. 263 (1906); *State v. Fogel*, 16 Ariz. App. 246, 492 P. 2d 742 (1972); cf. *United States v. McCarthy*, 445 F. 2d 587 (7th Cir. 1971); *Hodges v. State*, 214 Ga. 614, 615, 106 S.E. 2d 795, 796 (1959); *State v. Hundley*, 272 N.C. 491, 158 S.E. 2d 582 (1968).

Statutes of limitations are, of course, liberally construed in favor of the defendant and against the Commonwealth. *Waters v. United States*, 328 F. 2d 739,

---

[15] Act of March 31, 1860, P. L. 427, §77, as amended, 19 P.S. §211.

[16] See, e.g., Act of June 25, 1948, c. 645, 62 Stat. 828-29, 18 U.S.C. §§3288-89. Section 3288 provides: "Whenever an indictment is dismissed for any error, defect or irregularity . . . after the period prescribed by the applicable statute of limitations has expired, a new indictment may be returned in the appropriate jurisdiction within six calendar months of the date of the dismissal of the indictment. . . ."

Section 3289 provides: "Whenever an indictment is dismissed for any error, defect or irregularity . . . before the period prescribed by the applicable statute of limitations has expired, and such period will expire within six calendar months of the date of the dismissal of the indictment or information, a new indictment may be returned . . . within six calendar months of the expiration of the applicable statute of limitations. . . ."

742 (10th Cir. 1964); *United States v. Moriarty*, 327 F. Supp. 1045, 1047 (E.D. Wis. 1971); *State v. Fogel*, 16 Ariz. App. 246,    , 492 P. 2d 742, 744 (1972).

Our statute, like the statutes involved in the cases above cited, provides no express exception for an invalid indictment and we see no reason for abandoning the traditional rule that invalid indictments do not toll the statute of limitations. As was observed in *State v. Disbrow*, supra: "It seems to us a reasonable and just proposition that, in the absence of any statute saving such right to the state, the running of the statute of limitations ought not to be interrupted or suspended by the return and pendency of an indictment upon which no valid conviction or judgment can be founded. Such an indictment is no indictment. It is a nullity, and while it may serve as authority for the trial court to continue the defendant in custody and cause a re-submission of the case to the grand jury, such order is in effect the mere direction that the original inquiry shall be resumed as if the defective indictment had never been voted or returned into court. It is no more than a restoration of the case to the status it occupied at the time it was originally submitted. The grand jury takes it up anew, and may present or ignore the bill, without any reference whatever to the fact that one indictment has been presented and set aside." Id. at 29, 106 N.W. at 266: accord, *State v. Silver*, 239 Ore. 459, 463, 398 P. 2d 178, 180 (1965).

We recognize, of course, specific and heretofore articulated exceptions to the general rule that indictments returned beyond the period of the statute of limitations are invalid. The running of the statute may be tolled upon proof that the defendant is not a resident of the state or is absent from the state, Act of March 31, 1860, P. L. 427, §77, as amended, 19 P.S. §211; *United States ex rel. Kelley v. Rundle*, 242 F. Supp. 708, 712 (E.D.

Pa.), aff'd 353 F. 2d 214 (3rd Cir. 1965); *Commonwealth v. Cohen,* 203 Pa. Superior Ct. 34, 64-65, 199 A. 2d 139, 154-55, cert. denied, 379 U.S. 902, 85 S. Ct. 191 (1964), or has concealed himself from the authorities within the state. *Commonwealth v. Weber,* 259 Pa. 592, 103 Atl. 348 (1918). The cases before us do not come within these exceptions and the Commonwealth has failed to show any compelling reasons for creating a new exception in the instant circumstances.

## II

The Commonwealth nevertheless contends that the interests to be served by the statute of limitations were satisfied by the return of the first set of invalid indictments and the statute should have been considered tolled. It is argued that because the invalid indictments were returned within two years of the alleged crimes "at a time when the facts are still fresh in memory and when [the defendants were] in an ideal position to prepare a defense,"[17] the appellants in Nos. 325-26 and appellee in No. 327 could not possibly have suffered harm. We cannot agree.

The Supreme Court observed in *Toussie v. United States,* 397 U.S. 112, 90 S. Ct. 858 (1970): "The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions. Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law en-

---

[17] Brief for the Commonwealth, p. 9.

forcement officials promptly to investigate suspected criminal activity." Id. at 114-15, 90 S. Ct. at 860. The burden of defending against long completed conduct is onerous because "[a]s time passes, witnesses upon whom the defendant may need to rely die or move away; events are forgotten and records lost, particularly if the events seemed unimportant at the time of occurrence." Note, The Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution, 102 U. Pa. L. Rev. 630, 632 (1954).

The Supreme Court recently held that the constitutional right to a speedy trial, guaranteed by the Sixth Amendment and held applicable to the states by the Fourteenth Amendment, *Klopfer v. North Carolina,* 386 U.S. 213, 87 S. Ct. 988 (1967); *Dickey v. Florida,* 398 U.S. 30, 90 S. Ct. 1564 (1970), only protects defendants from prosecutorial delay between indictment and trial. *United States v. Marion,* 404 U.S. 307, 92 S. Ct. 455 (1971).[18] The Court's decision in *Marion* rested in large part on the presence of statutes of limitations designed to protect defendants against pre-indictment delay: "There is thus no need to press the Sixth Amendment into service to guard against the mere possibility that pre-accusation delays will prejudice the defense in a criminal case since statutes of limitation already perform that function." Id. at 323, 92 S. Ct. at 465. Furthermore, it is settled that post-indictment delays of several years will not automatically entitle an accused to relief on a speedy trial claim. See, e.g., *Barker v. Wingo,* 407 U.S. 514, 92 S. Ct. 2182 (1972); *Smith v. Hooey,* 393 U.S. 374, 89 S. Ct. 575 (1969); *Common-*

[18] The Court in *Marion* held: "[I]t is either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge that engages the particular protections of the speedy-trial provision of the Sixth Amendment." *United States v. Marion,* 404 U.S. 307, 320, 92 S. Ct. 455, 463 (1971).

*wealth v. Clark*, 443 Pa. 318, 279 A. 2d 41 (1971);
*Commonwealth v. Ditzler*, 443 Pa. 73, 277 A. 2d 336
(1971).

While the Supreme Court in *Marion* recognized the important interests served by reducing the total time lapse from the occurrence of the crime to trial, it concluded that the major protection against pre-indictment delay is the statute of limitations. The scheme of protection, identified in *Marion*, would be severely weakened without strict enforcement of the statute of limitations.[19]

---

[19] The Supreme Court observed in *Marion* "that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was a purposeful device to gain tactical advantage over the accused." *United States v. Marion*, 404 U.S. 307, 320, 92 S. Ct. 455, 465 (1971).

Pennsylvania has provided several statutory remedies to relieve defendants of the effects of long incarceration prolonged by prosecutorial pretrial delay. The Act of March 31, 1860, P. L. 427, §54, as amended, 19 P.S. §781, provides that "[i]f any person shall be committed for treason or felony, or other indictable offense and shall not be indicted and tried in the next term of court . . . it shall and may be lawful for the judges or justices thereof . . . on the last day of the term . . .to set at liberty the said prisoner upon bail, unless it shall appear to them, upon oath or affirmation, that the witnesses for the commonwealth . . . could not then be produced; and if such prisoner shall not be indicted and tried the second term [of court] . . . after his or her commitment . . . unless the delay happen on the application or with the assent of the defendant . . . he shall be discharged from imprisonment. . . ."; see Pa. R. Crim. P. 316 which provides that "[u]pon application and a showing that an indictment has not been found against a defendant within a reasonable time or that he has not been brought to trial within a reasonable time after indictment, the court may order dismissal of the prosecution. . . ." See also Interstate Agreement of Detainers Act, Act of September 8, 1959, P. L. 829, §1, 19 P.S. §1431; *Commonwealth v. Bunter*, 445 Pa. 413, 282 A. 2d 705 (1971); *Commonwealth v. Martin*, 445 Pa. 49, 282 A. 2d 241 (1971).

## III

The Commonwealth also contends that it is unfair to bar prosecution in these circumstances because the first invalid indictments were quashed by a ruling which imposed a "new" duty on the Commonwealth to notify defendants which grand jury will consider the bills of indictment. This contention lacks merit.

It has long been the law of this Commonwealth that the "defendant is entitled to reasonable notice where the bill is submitted at a term subsequent to the original term at which the bill was to be laid before the grand jury. . . ." *Commonwealth v. Gross,* 161 Pa. Superior Ct. 613, 619, 56 A. 2d 303, 306 (1948); *Commonwealth ex rel. Banks v. Myers,* 423 Pa. 124, 127, 222 A. 2d 880, 881-82 (1966);[20] *Commonwealth v. Bruno,* 203 Pa. Superior Ct. 541, 546-47, 201 A. 2d 434, 436 (1964), cert. denied, 379 U.S. 965, 85 S. Ct. 656 (1965).

The adoption of Rule 203 of the Pennsylvania Rules of Criminal Procedure, made effective January 1, 1965, more than two years before the submission of the bills of indictment in both cases, reinforced the need for such notice. Applying Rule 203 in *Commonwealth v. Dessus,* 423 Pa. 177, 224 A. 2d 188 (1966), we held that a prosecutor deprived a defendant of his constitutional right to challenge the array by presenting the bills of indictment to the grand jury sitting at the time of defendant's preliminary hearing thereby defeating the opportunity for the requisite advance challenge to the array. *Dessus* was decided more than a half year before the first submission of the bills of indictment in Nos. 325-26 and almost two years before the first submission in No. 327.

---

[20] In *Banks v. Myers,* we denied relief on the lack of notice claim because the claim was not raised until after trial. *Commonwealth ex rel. Banks v. Myers,* 423 Pa. 124, 127, 222 A. 2d 880, 882 (1966).

The purpose of *Dessus* was to prevent the undermining of the constitutional right to challenge the array because of an inability to satisfy the advance challenge requirement of Rule 203. It should have been perfectly evident to the Commonwealth that the lack of notice in these cases made compliance with Rule 203 as impossible to achieve as did the immediate submission of the bills of indictment in *Dessus* to the grand jury sitting at the time of defendant's preliminary hearing. Our decision in *Commonwealth v. Collemacine,* supra, requiring such notice, only reiterated what had already been established by prior law and also articulated by Rule 203.

## IV

The Commonwealth also maintains that appellants in Nos. 325-26 and appellee in No. 327 waived their right to quash the second set of indictments because they "deliberately" delayed the motions until the statute of limitations had expired. In support of this contention, *Commonwealth v. Burgess,* 446 Pa. 383, 288 A. 2d 810 (1972), is cited. *Burgess* is totally inapplicable to this case. In *Burgess,* the defendant[21] failed to move to quash the indictment on the basis of *Commonwealth v. Dessus,* supra, until seven months after trial following a guilty plea and more than five months after our decision in *Dessus.* Under those circumstances, we there concluded that defendant had waived his right to challenge the indictment. Here appellants in Nos. 325-26 and appellee in No. 327 made timely motions to quash before trial. Pa. R. Crim. P. 304, 305. These rules require, inter alia, that a pretrial application for relief be made more than ten days before trial and must include all requested grounds for relief (including a mo-

---

[21] The defendant in *Burgess* was a co-felon of the defendant in *Commonwealth v. Dessus,* 423 Pa. 177, 224 A. 2d 188 (1966).

tion to quash the indictment) in the one application. The Commonwealth's contention that the defendants here waived or forfeited their right to challenge the indictments could only be sustained upon proof of failure to comply with the requirements of Rules 304 and 305. The record discloses no such failure and instead shows complete compliance with these requirements.

It is to be noted that appellants Leon Cardonick and Frank Toughill were first indicted on July 18, 1967. The prosecution failed to move the cases to trial for almost a year. In June, 1968, six months after the two-year statute of limitations had expired, appellants, still awaiting trial, then moved to quash the indictments on the ground of lack of notice. Appellee Wilson Canada was first indicted on August 3, 1967. For almost two years the Commonwealth failed to move his case to trial. Seven months after the two-year statute of limitations expired, Canada, still not tried, moved to quash the indictments on similar grounds of lack of notice. It is beyond question that the primary obligation for moving cases to trial rests on the Commonwealth. See *Barker v. Wingo*, 407 U.S. 514,    , 92 S. Ct. 2182, 2185 (1972); cf. ABA Project on Minimum Standards for Criminal Justice, Standards Relating to Speedy Trial, §1.2 (Approved Draft, 1968).

Review of the record in these cases discloses no basis for denying defendants the protections afforded by the two-year statute of limitations.

In Nos. 325-26, the orders of the Superior Court affirming the judgments of sentence are reversed. In No. 327, the order of the Superior Court affirming the quashing of the indictments is affirmed.