## Commonwealth v. McReynolds

*Paul W. Johnson, Assistant District Attorney,* for Commonwealth.

*Carmen F. Lamancusa,* for defendant.

LYON, *J.*, March 24, 1976—Defendant is O'Neil McReynolds who was charged in two separate indictments with the crimes of theft by deception and robbery, both charges arising out of the same criminal episode. Defendant filed a timely application to dismiss the indictments which is now before the court for determination.

The motion was filed pursuant to Pa.R.Crim.P. 1100(f) which provides, in pertinent part:

"At any time before trial, the defendant or his attorney may apply to the court for an order dismissing the charges with prejudice on the ground that this Rule has been violated."

Defendant contends that his right to a speedy trial was denied in that he has not been brought to trial within 270 days from the date the criminal

complaint was filed against him, as required by Pa.R.Crim.P. 1100(a)(1). We agree, and, therefore, grant the motion to dismiss the indictments.

The relevant events transpired as follows:

On April 11, 1974, defendant was charged with theft by deception and robbery in a written criminal complaint filed before a district magistrate. Although the magistrate's records are silent, the oral testimony established that the magistrate dismissed the complaint sometime on or after July 30, 1974. During this interval of time, several hearings were scheduled but none were held for various reasons.

The record of the events subsequent to July 1974, disclosed the existence of a state of utter confusion between the interested parties. On July 30, 1974, a second complaint setting forth the identical charges was filed by the prosecuting officer without the knowledge, advice or consent of the district attorney. The district attorney did not learn of the second complaint until several months later, nor was the district attorney informed of the dismissal of the original complaint until December 17, 1974. Up to that time, he had proceeded on the assumption that the original complaint remained viable.

On October 30, 1974, a summons was issued pursuant to the second complaint and mailed to defendant at his Ohio address. On November 18, 1974, the summons was returned to the district magistrate marked as "unclaimed." On November 21, 1974, the summons was again mailed to defendant at the same address and this time it was accepted by him on November 25, 1974. That summons set a hearing date for December 17, 1974. An entry scribbled opposite this date on the district magistrate's docket indicates that defend-

ant did not appear and that the district attorney's motion to forfeit defendant's appearance bond was refused.

Assistant district attorney Paul Johnson was the only witness for the Commonwealth at this hearing on the motion to discharge defendant. He testified that neither defendant nor his attorney appeared at a scheduled hearing at the district magistrate's office which was set for sometime he could not specifically recollect during the months of August, September, or October. There is no record of a scheduled hearing in the district magistrate's docket except for the notation: "8/20/74—Defendant and D.A. to confer." However, defendant testified that on that date he was present at the district magistrate's office and left under the impression that the charges against him had been dismissed.

Mr. Johnson further testified that on November 12, 1974, he again appeared at the district magistrate's office for a scheduled hearing, but that neither defendant nor his attorney appeared. The records of the magistrate show that this hearing was scheduled by the original summons which was unserved. On the following day, November 13, 1974, in a letter to the district magistrate, the assistant district attorney reiterated his oral motion of the previous day requesting a forfeit of defendant's bond. He further requested the magistrate to notify the bondsman to produce defendant at the next scheduled hearing on December 17th. The assistant district attorney also personally notified the bondsman, as well as defense counsel, of the hearing time set for December 17th.

The district magistrate informed Mr. Johnson at the hearing on December 17th that defendant's appearance bond had lapsed when he dismissed the

original complaint at an earlier date and, as a consequence, defendant was under no legal compulsion to appear. Mr. Johnson was then aware of the existence of the second complaint, but he did not know the writ of summons had been duly served. He then observed the presence of defendant in the front office of the magistrate, but he was unable to state that the magistrate was aware of his presence, since the magistrate actually occupied another office. Defendant left the office before the assistant district attorney could have a warrant served upon him. The assistant district attorney thereupon requested the magistrate to issue a warrant and on January 15, 1975, it was issued by the district magistrate to the prosecuting officer. The case laid dormant thereafter until December 10, 1975, when it was returned to court for the purpose of staying the statute of limitations. On January 6, 1976, the grand jury returned indictments against defendant for theft by deception and burglary.

"The right to a speedy trial is one of our 'most basic rights,' " Klopfer v. North Carolina, 386 U.S. 213, 226 (1967), and is guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, section 9 of the Pennsylvania Constitution. Recently, the Pennsylvania Supreme Court declared that 'in order to more effectively protect the right of criminal defendants to a speedy trial and also to help eliminate the backlog of criminal cases in the courts of Pennsylvania we deem it expedient to formulate a rule of criminal procedure fixing a maximum time limit in which individuals accused of crime shall be brought to trial, in the future, in the Commonwealth.' Commonwealth v. Hamilton, 449 Pa. 297, 308-309, 297 A. 2d 127, 133 (1972). Subsequently, that court promulgated Rule 1100 which sets 'a time limit in

which cases could be brought to trial, the violation of which would result in an immediate dismissal if the delay were not caused by the defendant himself.' Commonwealth v. Pearson, 230 Pa. Superior Ct. 304, 307, 327 A. 2d 167, 168 (1974).

"Rule 1100(a)(1) provides that '[t]rial in a court case in which a written complaint is filed against the defendant after June 30, 1973, but before July 1, 1974, shall commence no later than two hundred seventy (270) days from the date on which the complaint was filed.' The rigidity of this rule, however, is tempered by Rule 1100(d)(1) which provides that '[i]n determining the period for the commencement for trial, there shall be excluded therefrom such period of delay at any stage of the proceedings as results from: (1) the unavailability of the defendant or his attorney' ": Quoted from Commonwealth v. Adams, 237 Pa. Superior Ct. 452 at 455, 352 A. 2d 97 at 98-99 (1975).

Neither defendant nor his counsel had the duty to arrange for a preliminary hearing. "Rule 1100 mandates that it is the Commonwealth's obligation to commence a trial no later than the prescribed time from the filing of a written complaint, unless excused upon a showing of due diligence. Rule 1100 is thereby consistent with prior case law which holds that it is the duty of the State to bring a defendant to trial. E.g., Barker v. Wingo, 407 U.S. 514 (1972); Commonwealth v. Cardonick, 448 Pa. 322, 292 A. 2d 402 (1972). These cases recognize that the strategy of defense often calls for delay and that the right to a speedy trial is not to be honored only for the vigilant and the knowledgeable. See Barker v. Wingo, supra; Hodges v. United States, 408 F. 2d 543 (8th Cir., 1969)". Commonwealth v. Adams, supra, 237 Pa. Superior Ct. at 456, 352 A. 2d at 98-99.

The proper application of Pa.R.Crim.P. 1100(d)(1) requires that the Commonwealth prove that it was actually prevented from fulfilling its duty of calling the case to trial by the unavailability of defendant or his counsel. In this case, the Commonwealth argues that Pa.R.Crim.P. 1100(d)(1) is brought into play by the mere showing that defendant is a resident of a foreign State where he is not amenable to any process issued by a Pennsylvania court. We do not agree.

The prosecuting attorney is not excused from the obligation of seeking interstate rendition of a defendant known to be in another jurisdiction. The Uniform Criminal Extradition Act is now the law in 47 States, including Pennsylvania and Ohio: Uniform Criminal Extradition Act, U.L.A., vol. 11, page 51; Ohio, R.C., §§2963.01 to 2963.29; 19 PS §§191.1 to 191.31. Defendant has resided at the same address in the State of Ohio for the past 10 years and continues to reside there. At all times material to the instant criminal proceedings, the precise address of defendant in the State of Ohio was known or easily accessible to the Commonwealth. Defendant was, therefore, amenable at all times material to this proceeding to an extradition process initiated by the Commonwealth. However, the effective procedures of the Uniform Criminal Extradition Act were not utilized by the Commonwealth in an endeavor to bring defendant to trial within the time limitation of Pa.R.Crim.P. 1100.

Although our ruling on this question is one of first impression, the plain intent of subsection (d)(1) of Pa.R.Crim.P. 1100 is manifested by the comment to the rule which provides:

"For the purposes of subsection (d)(1), in addition to any other circumstances precluding the availability of the defendant or his attorney, the defend-

ant should be deemed unavailable for any period of time during which he could not be apprehended because his whereabouts were unknown and could not be determined by due diligence; or during which he contested extradition, or a responding jurisdiction delayed or refused to grant extradition; . . ."

It is wholly clear and unambiguous from the language of the comment that a defendant is not unavailable merely because he lives in a sister State. The comment clearly intended to clarify the conditions that must be satisfied before such a defendant is unavailable for the purposes of subsection (d)(1). According to the comment, such a defendant is unavailable only during the period of time that "he contested extradition, or a responding jurisdiction delayed or refused to grant extradition."

Further support for this construction of subsection (d)(1) is found in the American Bar Association, Standards Relating to Speedy Trial (Approved Draft, 1968), comment 2.3(e). The comment to that subsection provides, in pertinent part:

"By virtue of the last sentence in this subsection, the running of the time for trial is tolled during that period when the defendant's presence for trial cannot be obtained or he resists return. This does not excuse the prosecuting attorney from the obligation of seeking interstate rendition of the defendant known to be in another jurisdiction. (The Uniform Criminal Extradition Act is now the law in forty-four states.) However, the running of the time will be tolled if the attempt at rendition is resisted by the defendant or is unsuccessful. . . ."

The United States Supreme Court made clear in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed. 2d 101 (1972), that the flexible constitutional

right to a speedy trial is closely akin to the more rigid speedy trial right created by State statutes. The constitutional and statutory rules merely represent different approaches to the task of effecting what Barker described as the "societal interest in providing a speedy trial." Since the same policy considerations undergird both approaches to the problem of delayed justice, it is logical to apply the same or similar standards when determining what reasons constitute a valid excuse for a delay in bringing a defendant to trial. In this respect, the decision of the United States Supreme Court in Smith v. Hooey, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed. 2d 607 (1969), is relevant to the present proceedings. That case was decided on an appeal from the denial of a rule to show cause why pending charges should not be dismissed. Petitioner in that case, like the instant defendant, was outside the jurisdiction of the State where the charges were pending. Petitioner had been indicted in the State of Texas upon a charge of theft. At that time, he was a prisoner in the Federal penitentiary at Leavenworth, Kansas. For a period of six years, he repeatedly asked the State of Texas to be brought to trial, but the State took no steps to obtain petitioner's appearance for trial. The United States Supreme Court held that these circumstances imposed a constitutional duty upon the State to make a diligent, good faith effort to bring him before a Texas court for trial and that the State of Texas had denied petitioner his constitutional right to a speedy trial. In passing, the court noted that the possibility of a refusal by Federal authorities to surrender petitioner is not the equivalent of asking and receiving a rebuff. Cf. Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed. 2d 26 (1970).

It would not help the Commonwealth if we were to assume, as the prosecution contends, that the evidence proves a course of conduct by defendant suggesting a settled purpose of avoiding prosecution upon the criminal complaint. It is undisputed that the Commonwealth took no action whatsoever to further the prosecution for a period in excess of 270 days. During this time, the Commonwealth plainly failed to use due diligence to bring defendant to trial. Rule 1100 does not impose a duty upon defendant to bring himself to trial. Instead, subsection (c) of that Criminal Procedural Rule imposes a positive duty upon the Commonwealth to use due diligence to bring defendant to trial within the time limitation of subsection (a). Here, the undisputed evidence proved that defendant could have been brought to trial within that time limitation if the Commonwealth had proceeded with due diligence to obtain interstate rendition of defendant pursuant to the Uniform Criminal Extradition Act.

This is not a case, as the Commonwealth contends, where the evidence establishes that, despite the prosecution's inaction, defendant could not have been brought to trial within that time limitation through the exercise of due diligence. A decision on that question must await another day.

## ORDER OF COURT

Now, March 24, 1976, for the reasons stated in the foregoing opinion, it is ordered, adjudged and decreed that the motion to quash the indictments and dismiss the above-captioned case with prejudice be, and herewith is, granted.