J-S19024-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ARTHUR F. GUPTON, | : | |
| | : | |
| Appellant. | : | No. 731 EDA 2018 |

Appeal from the PCRA Order, February 20, 2018,
in the Court of Common Pleas of Philadelphia County,
Criminal Division at No(s): CP-51-CR-0004847-2012.

BEFORE: LAZARUS, J., KUNSELMAN, J., and STRASSBURGER*, J.

MEMORANDUM BY KUNSELMAN, J.: **FILED JUNE 25, 2019**

Arthur F. Gupton appeals from the order denying his first petition for relief pursuant to the Post Conviction Relief Act ("PCRA"). 42 Pa.C.S.A. §§ 9541-9546. We affirm the PCRA order, but vacate a portion of the sentence as set forth herein.

The PCRA court has summarized the pertinent facts as follows:

> In 1997, [Gupton] abducted sixteen-year-old A.S. at gunpoint as she was walking home, drove her to a remote garage, and raped her with a knife to her throat. She ran home and told her mother and a family friend what happened. They called the police and A.S. gave the arriving officer a description of [Gupton]. She then went to the hospital, where she submitted to a rape kit examination which tested positive for ejaculate. [Gupton] remained a fugitive for over fifteen years.
>
> On January 5, 2011, Detective James Owens, a "cold case" investigator for the Special Victims Unit of the Philadelphia Police Department, received notification from

_____

* Retired Senior Judge assigned to the Superior Court.

the department's DNA lab that DNA acquired from [Gupton] matched that found in the ejaculate of the rape kit conducted on A.S. in 1997. Detective Owens met with [Gupton] and took a buccal swab to obtain a sample of his DNA. The police lab tested the swab against the DNA found in the 1997 rape kit and found that [Gupton] was the source of the ejaculate found in A.S.'s vaginal and cervical swabs. The Commonwealth obtained an arrest warrant for [Gupton] on December 28, 2011, and arrested him on January 18, 2012.

PCRA Court Opinion, 11/1/18, at 1-2 (citations omitted).

The PCRA court also summarized the procedural history as follows:

On October 5, 2012, a jury sitting before this Court convicted [Gupton] of rape, kidnapping, sexual assault, carrying a firearm without a license, corruption of a minor and indecent assault. On May 31, 2013, this Court found him to be a sexually violent predator and imposed consecutive terms of imprisonment of ten to twenty years for rape, eight to twenty years for kidnapping, three and one-half to seven years for violating the Uniform Firearms Act, two to five years for corruption of a minor, and no further penalty for the remaining crimes. As part of the hearing, the Court discussed the statute of limitations issue with the attorneys for Commonwealth and [Gupton], and [Gupton].

On June 10, 2013, [Gupton] filed a post-sentence motion challenging the weight of the evidence, which the Court denied on June 25, 2013. The following day, on June 26, 2013, [Gupton] filed an untimely second post-sentence motion purporting to challenge the discretionary aspects of sentencing. This untimely second post-sentence motion was denied by operation of law [pursuant to] Pa.R.Crim.P. 720(B)(3)(a).

***Id.*** at 2-3 (citations omitted).[1]

Gupton filed a timely appeal, and this Court affirmed his judgment of sentence on December 15, 2014. ***Commonwealth v. Gupton***, 116 A.3d 687 (Pa. Super. 2014) (unpublished memorandum). On May 12, 2015, our Supreme Court denied Gupton's petition for allowance of appeal. ***Commonwealth v. Gupton***, 116 A.3d 603 (Pa. 2015).

On April 29, 2016, Gupton filed a timely *pro se* PCRA petition. The PCRA court appointed counsel, and PCRA counsel filed an amended petition on June 5, 2017. In this amended petition, Gupton contended that trial counsel was ineffective "for failing to file a motion barring prosecution" for kidnapping and carrying a firearm without a license "because the criminal activity alleged in the complaint was beyond the statute of limitations." Amended Petition, Memorandum of Law, at 1. The Commonwealth filed a motion to dismiss Gupton's petition on October 10, 2017.

On December 4, 2017, the PCRA issued Pa.R.Crim.P. 907 notice of its intention to dismiss Chamber's PCRA petition without a hearing. Gupton did not file a response. By order entered February 20, 2018, the PCRA court

---

[1] The trial court also ordered Gupton to comply with the reporting and registration requirements of the Sexual Offender Registration and Notification Act ("SORNA").

dismissed the petition. This appeal followed.[2] Both Gupton the PCRA court have complied with Pa.R.A.P. 1925.

Gupton raises the following issue:

1. Did the trial court err by dismissing the PCRA petition when trial counsel was ineffective for failing to assert that the charges of kidnapping and violation of the Uniform Firearms Act were time barred by the applicable statute of limitations?

*See* Gupton's Brief at 3.

Our scope and standard of review is well settled:

In PCRA appeals, our scope of review is limited to the findings of the PCRA court and the evidence on the record of the PCRA court's hearing, viewed in the light most favorable to the prevailing party. Because most PCRA appeals involve questions of fact and law, we employ a mixed standard of review. We defer to the PCRA court's factual findings and credibility determinations supported by the record. In contrast, we review the PCRA court's legal conclusions *de novo.*

*Commonwealth v. Reyes-Rodriguez*, 111 A.3d 775, 779 (Pa. Super. 2015) (citations omitted).

When the PCRA court has dismissed a petitioner's PCRA petition without an evidentiary hearing, we review the PCRA court's decision for an abuse of discretion. *Commonwealth v. Roney*, 79 A.2d 595, 604 (Pa. 2013). The PCRA court has discretion to dismiss a petition without a hearing when the

---

[2] By order entered March 13, 2018, the PCRA court permitted PCRA counsel to withdraw and, thereafter, appointed present counsel to assist Gupton in this appeal.

court is satisfied that there are no genuine issues concerning any material fact, the defendant is not entitled to post-conviction collateral relief, and no legitimate purpose would be served by further proceedings. *Id.* To obtain a reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of material fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing. ***Commonwealth v. Blakeney***, 108 A.3d 739, 750 (Pa. 2014).

Gupton's issue alleges the ineffective assistance of trial counsel. To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish, by a preponderance of the evidence, that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." ***Id.*** This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's act or omission prejudiced the petitioner. ***Id.*** at 533.

As to the first prong, "[a] claim has arguable merit where the factual averments, if accurate, could establish cause for relief." ***Commonwealth v. Stewart***, 84 A.3d 701, 707 (Pa. Super. 2013) (*en banc*). "Whether the facts

rise to the level of arguable merit is a legal determination.'" *Id.* (citing *Commonwealth v. Saranchak*, 866 A.2d 292, 304 n.14 (Pa. 2005).

As to the second prong of this test, trial counsel's strategic decisions cannot be the subject of a finding of ineffectiveness if the decision to follow a particular course of action was reasonably based and was not the result of sloth or ignorance of available alternatives. *Commonwealth v. Collins*, 545 A.2d 882, 886 (Pa. 1988). Counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Ervin*, 766 A.2d 859, 862-63 (Pa. Super. 2000) (citation omitted).

As to the third prong of the test for ineffectiveness, "[p]rejudice is established if there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Stewart*, 84 A.3d at 707. "A reasonable probability 'is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Commonwealth v. Rathfon*, 899 A.2d 365, 370 (Pa. Super. 2006).

Finally, when considering an ineffective assistance of counsel claim, the PCRA court "is not required to analyze these [prongs] in any particular order of priority; instead if a claim fails under any necessary [prong] of the ineffectiveness test, the court may proceed to that [prong] first." *Commonwealth v. Tharp*, 101 A.3d 736, 747 (Pa. 2014) (citations omitted). In particular, when it is clear that the petitioner has failed to meet the prejudice prong, the court may dispose of the claim on that basis alone,

without a determination of whether the first two prongs have been met. ***Commonwealth v. Travaglia***, 661 A.2d 352, 357 (Pa. 1995).

In his attempt to establish the arguable merit of his ineffectiveness claim, Gupton asserts that the "Ex Post Facto" and "Due Process" clauses of both the federal and state constitutions "bar prosecution where the previously effective statute of limitations had expired before [the Pennsylvania legislature] enacted 42 Pa.C.S.A. § 5552(c.1)" in 2004. Gupton's Brief at 9. According to Gupton, "a newly enacted state law cannot be used to revive a previously time-barred prosecution." ***Id.***

Gupton's claim fails for a number of reasons. Initially, our review of Gupton's amended petition supports the Commonwealth's assertion that Gupton did not raise this constitutional issue in the petition. ***See*** Commonwealth's Brief at 6. Thus, Gupton inappropriately raises this issue for the first time on appeal, and it is therefore waived. ***See Commonwealth v. Edmiston***, 851 A.2d 883, 889 (Pa. 2004) (explaining a claim that is not raised in PCRA petition is waived on appeal); ***see also*** Pa.R.A.P. 302(a).

Moreover, Gupton's claim is also waived because he has failed to develop his constitutional claim. ***See Commonwealth v. Tielsch***, 934 A.2d 81, 93 (Pa. Super. 2007) (holding that undeveloped claims will not be considered on appeal). Although Gupton discusses several U.S. Supreme Court decisions, he does not explain how their holdings apply to the circumstances of his case. ***See*** Gupton's Brief at 14-15.

In ***Commonwealth v. Rose***, 127 A.3d 794 (Pa. 2015), our Supreme

Court discussed the federal *ex post facto* clause as follows:

> The Ex Post Facto Clause of the United States Constitution is contained in Article [I], § 10, which provides: "No State shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the Obligations of Contracts . . . " U.S. Const. art. I, § 10. The definition of an *ex post facto* law in the context of American law was first set forth more than two centuries ago in ***Calder v. Bull***, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), wherein Justice Chase offered the following description of the term:
>
>> [1] Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action. [2] Every law that aggravates a crime, or makes it greater than it was, when committed. [3] Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. [4] Every law that alters the legal rules of evidence, and receives less, or different testimony, than the law required at the time of the commission of the [offense], in order to convict the offender.
>
> 3 U.S. (3 Dall.) 386, 390 (1798).

***Rose***, 127 A.3d at 797-98 (footnote omitted).[3] ***Rose*** involved an *ex post*

*facto* violation, but concerned the proper sentence for a defendant based on

---

[3] The ***Rose*** court noted that, because Pennsylvania's *ex post facto* law, Article I, § 17, provides the same protections as its federal counterpart, it did not need to conduct a separate analysis. ***Rose***, 127 A.3d at 798, n.11; ***but see Commonwealth v. Muniz***, 164 A.3d 1189, 1223 (Opinion Announcing the Judgment of the Court, Dougherty, J.) (noting that in previous decisions the Pennsylvania Supreme Court has found some divergence between the state and federal *ex post facto* clauses, and, at least in the context of sexual offender registration, "Pennsylvania's *ex post facto* clause provides even greater protections than its federal counterpart").

when he committed the crime. Although Gupton relies on **Rose**, he fails to explain which type of *ex post facto* violation he claims occurred in his case.

The deficiency in Gupton's constitutional claim is understandable. Even absent waiver, Gupton's assertion that trial counsel was ineffective for failing to challenge his kidnapping and firearm charge based on an expired statute of limitations is meritless.

Section 5552 of the Judicial Code governs the time in which the Commonwealth must initiate a prosecution. 42 Pa.C.S.A. § 5552. Most offenses are subject to a two-year statute of limitations; however, certain enumerated offenses have five-year statutes of limitations. **See** 42 Pa.C.S.A. 5552(a) & (b). At issue in this case is Section 5552(c.1), which provides:

> **(c.1) Genetic identification evidence.—**Notwithstanding any provision of law to the contrary, if evidence of a misdemeanor sexual offense set forth in subsection (c)(3) or a felony offense is obtained containing human deoxyribonucleic acid (DNA) which is subsequently used to identify an otherwise unidentified individual as the perpetrator of the offense, the prosecution of the offense may be commenced within the period of limitations provided for the offense or **one year after the identity of the individual is determined, whichever is later.**

42 Pa.C.S.A. § 5552(c.1) (emphasis added).

As noted above, Gupton claims that section 5552(c.1) cannot apply to him because the statute of limitations for kidnapping and the firearm violation had expired before the Pennsylvania legislature had enacted subsection (c.1) in 2004. The trial court found no merit to this claim, and explained as follows:

> [Gupton] argues that trial counsel should have petitioned for barring prosecution for kidnapping and carrying a firearm without a license because subsection (c.1) does not apply to him where it was promulgated as an amendment to § 5552 in 2004, two years after the statute of limitations would have tolled for kidnapping under subsection (b) [(providing a five-year statute of limitation for major offenses)], and five years after the statute of limitations would have tolled for carrying a firearm without a license under subsection (a) [(providing, as a general rule, a two-year statute of limitation for offenses)]. However, this interpretation of subsection (c.1) is not supported by the plain language of the statute nor by any other legal authority. Trial counsel could not have been ineffective for failing to adopt an interpretation of the statute that lacks any basis in law.
>
> In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903. Additionally, when determining the intent of a statute, it is presumed "that the General Assembly does not intend a result that is absurd." 1 Pa.C.S. § 1922(1)[.]
>
> According to its plain meaning, the language of the statute of limitations has no restriction precluding the application of subsection (c.1) to offenses for which the statute of limitations would have expired under some other subsection. Such a result would contradict the very **purpose** of subsection (c.1), which is to provide the opportunity to prosecute a perpetrator who managed to hide his identity for more than the length of the statute of limitations, but was subsequently discovered by DNA identification evidence. This statute was designed for precisely cases such as this one.

PCRA Court Opinion, 11/1/18, at 5-6 (emphasis in original; citations omitted).

We agree. The Commonwealth discovers an offense when it gains knowledge or learns a defendant has violated a penal statute. ***Commonwealth v. Hawkins***, 439 A.2d 748, 750 (Pa. Super. 1982). Here, although the offenses occurred in 1997, law officials did not identify Gupton as the perpetrator until January 5, 2011. Thus, given the plain language section 5552(c.1), the Commonwealth had one year from that date to commence its prosecution of Gupton. Because the Commonwealth commenced prosecution in December 2011, the charges at issue were not time-barred, and trial counsel cannot be deemed ineffective for failing to pursue this meritless claim. ***See generally***, ***Commonwealth v. Loner***, 836 A.2d 125 (Pa. Super. 2003) (*en banc*).

As he did below, in arguing to the contrary, Gupton relies upon our Supreme Court's decision in ***Commonwealth v. Laventure***, 894 A.2d 109, 116-17 (Pa. 2006). In ***Laventure***, the Commonwealth, four days before the expiration of the five-year period of limitations under Section 5552(b), filed a complaint alleging arson and other crimes against an unknown defendant, identified only as "John Doe 'Steve'" having an unknown address, and who was a white male, in his thirties. ***Laventure***, 894 A.2d at 111. Approximately one week later, the Commonwealth identified "John Doe 'Steve'" as Laventure, and amended the criminal complaint accordingly. ***Id.***

Subsequently, after Laventure filed a pre-trial motion, the trial court dismissed the prosecution "holding that, given the generality of the description

contained in the initial complaint and warrant, neither instrument was valid or sufficient to support the commencement of criminal proceedings under Section 5552(b)." *Id.* (citation omitted). The Commonwealth filed an appeal to this Court and a divided panel reversed. *See Commonwealth v. Laventure*, 858 A.2d 112 (Pa. Super. 2004). The *Laventure* majority concluded that "the statute of limitations was tolled by the filing of the initial complaint and the prompt substitution of the amended complaint and warrant." *Laventure*, 894 A.2d at 114 (citation omitted).[4] Upon further review, our Supreme Court in turn reversed this Court, holding "that the initial complaint filed and warrant issued in this case were ineffective for the purpose of tolling Section 5552(b)'s period of limitations, and the amendments cannot be deemed to relate back to the dates of the original documents." *Laventure*, 894 A.2d at 119 (footnote omitted).

The PCRA court correctly found Gupton's reliance on our Supreme Court's decision in *Laventure* to be misplaced:

> [Gupton] misconstrues the holding of [*Laventure*] to support his argument. *Laventure* addressed subsection (b) of 42 Pa.C.S. § 5552, whereas the instant case involves subsection (c.1) of 42 Pa.C.S. § 5552. Subsection (b) specifies a five or twelve year statute of limitations for various offenses, including kidnapping and rape, whereas

---

[4] Judge Peter Paul Olszewski dissented because he believed the information in the original complaint was insufficient to support the commencement of an action, and the majority cited no case authority supporting its conclusion that the amended complaint could "relate back" to the original complaint. *See Laventure*, 858 A.2d at 117-18.

subsection (c) addresses exceptions to those statute[s] of limitations. In **Laventure**, [our Supreme Court] found that filing an arrest warrant was insufficient where it described the unknown [defendant] as "John Doe 'Steve', having an unknown address, and who was a white male, in his thirties." **Id.** at 118-19. The question of whether or not a description in an arrest warrant is sufficient to toll the statute of limitations is simply not applicable in this case, where prosecution commenced within one year of the discovery of DNA evidence that identified a previously unknown perpetrator. Here, the Commonwealth did not file any complaint nor seek any warrant until it discovered [Gupton's] identity. The subsection of the statute of limitations implicated in **Laventure**, subsection (b), had no relevance to the instant case. Only subsection (c.1) applied in the instant case, and no legal authority exists that prevents its application to [Gupton's] prosecutions for kidnapping or carrying a firearm without a license.

PCRA Court Opinion, 11/1/18, at 6-7.

We agree. In fact, in **Laventure** our Supreme Court noted the trial court's distinguishing Laventure's claim from "situations in which the Commonwealth is able to furnish reasonably specific identification characteristics or criteria of an unknown or unnamed individual, **such as a DNA profile**[.]" **Laventure**, 894 A.2d at 111 (emphasis added).

Thus, we affirm the order denying Gupton post-conviction relief on the ineffective assistance of counsel claim he raised in his amended petition.

As an additional matter, we address the legality of Gupton's sentence *sua sponte*. **See Commonwealth v. DiMatteo**, 177 A.3d 182, 191 (Pa. 2018) (holding that an illegal sentence may be reviewed in the context of a timely PCRA petition); **Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa. Super 2003) (*en banc*) (explaining challenges to an illegal sentence cannot be

- 13 -

waived and may be raised by Superior Court *sua sponte*; assuming jurisdiction is proper, illegal sentence must be vacated).

Most recently, this Court addressed a situation in which a defendant was designated an SVP and who was later ordered to register under SORNA, even though he committed the sex offenses prior to the effective date of SORNA. In **Commonwealth v. Adams-Smith**, 2019 WL 1997650, ___ A.3d ___ (Pa. Super. 2019), we first discussed recent decisions by our Supreme Court in **Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (declaring SORNA unconstitutional as an *ex post facto* law applied to persons who committed sex offenses prior to the effective date of SORNA, December 20, 2012), and this Court's subsequent decisions in **Commonwealth v. Rivera-Figueroa**, 174 A.3d 674 (Pa. Super. 2017) (holding **Muniz** created a substantive rule that retroactively applies in the collateral context), and **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017), *appeal granted*, 190 A.3d 581 (Pa. 2018) (applying the federal decisions prohibiting judicial fact-finding at the time of sentencing in **Apprendi v. New Jersey**, 530 U.S. 466 (2000), and **Alleyne v. United States**, 570 U.S. 99 (2013), to the SVP process in light of **Muniz**).

We then concluded:

> Because [Adams-Smith] committed his offenses before the effective date of SORNA, the increased reporting requirements of SORNA constitute greater punishment for [Adams-Smith]. **See Muniz**, **supra**. Thus, the imposition of SORNA registration requirements on [Adams-Smith] violates the *ex post facto* clauses of both the United States and Pennsylvania Constitutions.

- 14 -

*Adams-Smith*, at *7 (footnote omitted).

Here, Gupton committed his crimes in 1997, long before the legislature enacted SORNA in 2012. Thus, like Adams-Smith, the application of SORNA's increased reporting requirements to Gupton violates the *ex post facto* clauses of both the federal and state constitutions.

In *Adams-Smith*, we also noted that Adams-Smith had been designated an SVP. We then discussed this Court's decision in *Butler*, which dealt with "the related issue concerning the validity of the process and imposition of SVP status on a defendant." *Adams-Smith*, at *8. We observed that in reaching a decision in *Butler*, to conclude that the SVP process involved unconstitutional judicial fact-finding at the time of sentencing, "the *Butler* Court simply applied *Alleyne* and *Apprendi* to the SVP process, in light of *Muniz*." *Id.*

Therefore, even though Adams-Smith's judgment of sentence became final prior to this Court's decision in *Butler*, the panel determined that Adams-Smith was still entitled to relief:

> Both *Muniz* and *Butler* were decided during the pendency of [Adams-Smith's] timely PCRA petition. Under these new cases, [his] SVP status constitutes an illegal sentence subject to correction. *See* 42 Pa.C.S.A. § 9542 (stating persons serving illegal sentence may obtain collateral relief); *DiMatteo*, *supra* (noting unconstitutionality of Section of 7508 [of the Judicial Code] in light of *Alleyne* and allowing *Alleyne* relief in PCRA context, so long as judgment of sentence was not final *before Alleyne was decided*) (citing *Commonwealth v. Ruiz*, 131 A.3d 54 (Pa. Super. 2015) (applying *Alleyne* to correct illegal sentence in context of a timely-filed PCRA petition)).

> To quiet any conflict in the law, we now hold a PCRA petitioner can obtain relief from an illegal sentence under *Butler*, if the petition is timely filed, as long as the relevant judgment of sentence became final *after* June 17, 2013, the date *Alleyne* was decided. Because *Butler* simply applied *Alleyne* principles to the SVP process, *Butler* did not announce a new constitutional rule that required a [*Teague v. Lane*, 489 U.S. 288 (1989)] retroactivity analysis. *See* [*Chaidez v. U.S.*] 568 U.S. 342 (2013)]. Therefore, the date of the *Alleyne* decision, not the date of the *Butler* decision, controls for the purposes of obtaining PCRA relief from the imposition of SVP status.

*Adams-Smith*, at *8 (emphasis in original).

Although we affirmed the denial of post-conviction relief based upon his claim of ineffectiveness counsel, we vacated Adams-Smith's judgment of sentence to the extent it required registration and reporting requirements under SORNA, and Adams-Smith's SVP status. We remanded "the case to the trial court to instruct [Adams-Smith] on his proper registration and reporting requirements." *Id.*

Here, like Adams-Smith, both *Muniz* and *Butler* were decided during the pendency of Gupton's timely PCRA petition. Thus, although Gupton's claim of counsel's ineffectiveness warrants no relief, we vacate his judgment of sentence, to the extent it required SORNA compliance, as well as his designation as an SVP. We therefore remand this case to the trial court to instruct Gupton on his proper registration and reporting requirements. *See* 42 Pa.C.S.A. §§ 9799.51-9799.75.

Order affirmed in part; SORNA requirements and SVP status vacated; case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/25/19