J-S10006-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| CALVIN GADSON | |
| Appellant | No. 2876 EDA 2014 |

Appeal from the Judgment of Sentence August 15, 2014
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0001989-2010

BEFORE: GANTMAN, P.J., BENDER, P.J.E., and PLATT, J.*

MEMORANDUM BY GANTMAN, P.J.:                    **FILED FEBRUARY 08, 2016**

Appellant, Calvin Gadson, appeals from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for rape, conspiracy to commit rape, sexual assault, robbery, and unlawful restraint.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. On January 31, 1998, fifteen-year-old D.R. and her boyfriend, K.B., were walking home.  As they passed a public park near Dobbins High School, Appellant and another man pointed guns at D.R. and K.B. and ordered them to enter the park through bent bars in the fence.  One of the men hit K.B. on

_____

[1] 18 Pa.C.S.A. §§ 3121(a)(1), 903(a)(1), 3124.1, 3701(a)(1)(ii), and 2902(a)(1), respectively.

_____

*Retired Senior Judge assigned to the Superior Court.

the back of the head with a gun. The men ordered D.R. and K.B. to empty their pockets. K.B. protested, and the men told him to stop arguing or they would kill D.R. D.R. and K.B. complied and gave the men some change and a beeper. One of the men took D.R. over to a tree and ordered her to remove her clothing. He told her to perform oral sex on him, and she did so. He then vaginally penetrated her, telling her he would kill her if she did not comply. Meanwhile, the other man held K.B. to the ground at gunpoint.

After the first man assaulted D.R., he stood over K.B. with a gun while the other man raped D.R. The second man attempted to have anal sex with her. When he was unable to penetrate her anally, he told her to perform oral sex on him. He also vaginally penetrated her. After he stopped, the second man told D.R. to stay facedown and not to look at him, or he would kill her. Several moments later, K.B. told D.R. to stand and get dressed, and the two returned to D.R.'s home. D.R. informed her guardian of the assault before D.R. called the police. The police took her to the hospital, where a nurse prepared a rape kit. Police showed D.R. a photographic array in 1998 and 2009, but she was unable to identify either of her attackers. The samples in the rape kit were preserved, and a DNA profile was obtained and documented on July 29, 2002.

On July 31, 2009, the DNA taken from D.R.'s cervix in 1998 and preserved in the rape kit was matched to Appellant. Police obtained a search warrant authorizing them to take a DNA sample from Appellant on

October 6, 2009.  The DNA taken from D.R.'s rape kit matched the DNA sample police took from Appellant.  Police arrested Appellant on January 4, 2010, and charged him with various offenses related to the 1998 incident.

Following numerous continuances, the case finally proceeded to trial on February 5, 2014.  A jury convicted Appellant of rape, conspiracy to commit rape, sexual assault, robbery, and unlawful restraint on February 11, 2014.  The jury acquitted Appellant of violating the Uniform Firearms Act ("VUFA").  The court ordered a Presentence Investigation Report ("PSI").  Following a hearing on August 15, 2014, the court entered an order classifying Appellant as a sexually violent predator.  The court immediately sentenced Appellant to consecutive terms of ten (10) to twenty (20) years' imprisonment each for the rape, conspiracy to commit rape, and robbery convictions.  The court also sentenced Appellant to a consecutive two and a half (2½) to five (5) years' imprisonment for the sexual assault conviction, and a concurrent term of one and a half (1½) to three (3) years' imprisonment for the unlawful restraint conviction.  Appellant received an aggregate sentence of thirty-two and a half (32½) to sixty-five (65) years' incarceration.

The court appointed appellate counsel on August 26, 2014.  On September 12, 2014, Appellant filed a timely notice of appeal.  On September 15, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Rule 1925(b).  The court

granted Appellant's request for an extension of time to file a Rule 1925(b) statement, and Appellant timely filed it on February 10, 2015.

Appellant raises a single issue for our review:

> WAS THE EVIDENCE INSUFFICIENT TO SUPPORT A CONVICTION OF RAPE WHERE [THE] JURY FOUND APPELLANT DID NOT USE A FIREARM DURING THE COMMISSION OF THE CRIME?

(Appellant's Brief at 3).

Appellant argues the Commonwealth was required to prove the element of forcible compulsion to sustain his rape conviction. Appellant avers the evidence at trial did not demonstrate a struggle occurred before Appellant and D.R. had intercourse. Appellant contends the jury acquitted him of the VUFA charge because it did not believe he threatened D.R. with a gun. Appellant maintains that, absent a struggle or the possession of a firearm, the Commonwealth was unable to prove the forcible compulsion element of rape. Appellant concludes the Commonwealth failed to meet its burden of proof, and this Court should vacate the judgment of sentence on his rape conviction. We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted…in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In

- 4 -

addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The Crimes Code defines rape as follows:

**§ 3121.  Rape**

**(a)  Offense defined.—**A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:

(1)  By forcible compulsion.

18 Pa.C.S.A. § 3121(a)(1).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Giovanni Campbell, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (**See** Trial Court Opinion, filed February 23, 2015, at 4-7)

(finding: D.R. and K.B. testified they were walking home from K.B.'s house when two men with firearms confronted them, forced D.R. and K.B. into nearby park, took items from their pockets, and threatened to kill D.R. if K.B. did not comply; D.R. testified both men orally and vaginally penetrated her without her consent; D.R. maintained each man held gun to her head during separate rapes, and both men repeatedly threatened to kill her if she resisted; D.R.'s rape kit revealed DNA profile that was later matched to Appellant's DNA; D.R. and K.B.'s testimony established crimes of rape, conspiracy to commit rape, sexual assault, robbery, and unlawful restraint; there is no basis to state why jury acquitted Appellant on VUFA charge; jury may have determined objects that appeared to be firearms were used to place D.R. and K.B. in fear and make them comply with Appellant and his cohort, regardless of whether objects were actually firearms; jury's acquittal on VUFA charge remains consistent with convictions on other charges; even if jury's acquittal on VUFA charge was inconsistent with other convictions, precedent dictates juries may deliver inconsistent verdicts).  The record supports the court's conclusion, which we will not disturb.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

![signature: Joseph D. Seletyn]

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/8/2016</u>

IN THE COURT OF COMMON PLEAS
FOR THE FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
TRIAL DIVISION – CRIMINAL

COMMONWEALTH OF PA          :          CP-51-CR-0001989-2010 **FILED**

v.                                      :                         FEB 2 3 2015

CALVIN GADSON                  :          Criminal Appeals Unit
                                                   First Judicial District of PA

## MEMORANDUM OPINION

*CAMPBELL, J.*                                                      February 23 , 2015

### Procedural History

Defendant, Calvin Gadson, was arrested on January 4, 2010, and charged with Rape and

related offenses occurring on or about January 31, 1998.

On February 5, 2014, 2014, the case proceeded to trial before this Court, sitting with a

jury. On February 11, 2014, the jury returned its verdicts. Defendant was convicted of Rape,

Conspiracy to commit Rape, Sexual Assault, Unlawful Restraint, and Robbery. He was

acquitted of a violation of the Uniform Firearms Act (18 Pa.C.S. § 6106).

On August 15, 2014, following a hearing, Defendant was classified a Sexually Violent

Predator. He was then sentenced to 10-20 years incarceration on the Rape, 10-20 years on the

Conspiracy to commit Rape, 2 ½ - 5 years on the Sexual Assault, 1 ½ - 3 years on the Unlawful

Restraint and 10-20 years on the Robbery. The sentences on the Rape, Conspiracy and Robbery

were each consecutive to one another. The sentences on the Sexual Assault and the unlawful

restraint were concurrent with each other, but consecutive to the other sentences, for an

aggregate sentence of 32 ½ - 65 years incarceration.

Appellate counsel was appointed on August 26, 2014.

A timely Notice of Appeal was filed on September 12, 2014.

On September 15, 2014, the Court entered an order directing the filing of a Statement of

Matters Complained of on Appeal, pursuant to Pa.R.A.P. 1925(b).

A timely 1925(b) statement was filed by appellate counsel on October 1, 2014, requesting leave to file a supplemental notice after receipt of the notes.

On October 7, 2014, the Court granted an extension of time in which to file an Amended 1925(b) Statement to 21 days after the notes of testimony became available.

On February 10, 2015, a Supplemental Statement of Matters Complained of on Appeal was filed.

## Factual History

The evidence adduced at trial, viewed in the light most favorable to the Commonwealth as the verdict winner, established the following:

On January 31, 1998, then 15 year old D. B. née D. R. was walking home accompanied by her then boyfriend, now husband, K. B. N.T. 2/5/14, pp. 47-48. As they passed a park near Dobbins High School two men with guns ordered them into the park through bent bars in the fence. NT. 2/5/14, pp. 48, 60-61, 101-102, 104, 106. One of the men had a .22 and the other had a shotgun which they pointed at D. R. and K. B. N.T. 2/6/14, pp. 136, 167-169, 171, 191-192.

One of the men hit K. B. in the back of the head with the .22. N.T. 2/6/14, p. 137. The men ordered D. R. and K. B. to empty their pockets of a beeper and some change. N.T. 2/5/14, pp. 49, 62-63. K. B. protested, but was told to shut up or they would kill D. R. N.T. 2/5/14, p. 62; N.T. 2/6/14, p. 136.

One of the men took D. R. over by a tree and ordered her to remove her clothes. N.T. 2/5/14, pp. 50-51, 123. After she removed her clothes, the man ordered her to perform oral sex on him. N.T. 2/5/14, pp. 51, 125. He then told her to turn around and he touched her vagina

before penetrating her vagina with his penis. N.T. 2/5/14, pp. 51-54, 124. During this time the man told D. R. that she had better do what he said or he would kill her. N.T. 2/5/14, p. 53.

After the first man finished having intercourse with her, the second man approached D. R. and attempted to have anal sex with her. N.T. 2/5/14, p. 55. When he was unable to penetrate her anally, he ordered her to perform oral sex on him, which she did. N.T. 2/5/14, p. 55-56. This second man then had vaginal intercourse with her. N.T. 2/5/14, p. 56. When he was done, the second man told D. R. to lie down and not look at him, or he would kill her. N.T. 2/5/14, p. 56. After a couple of minutes she heard her boyfriend's voice telling her to hurry and get dressed, after which they left and went to her home. N.T. 2/5/14, p. 56.

After the couple walked to D. R. 's home together, D. R. sent K. B. home, and then told her grandmother what had happened. N.T. 2/5/14, p. 64-65; N.T. 2/6/14, p. 139, 151. D. R. then called the police, who took her to the police station, and then to the hospital where she was examined and a rape kit was prepared. N.T. 2/5/14, pp. 64-66, 133, 85-86. Although she was shown photographs in 1998 and again in 2009, she could not identify the perpetrators. N.T. 2/5/14, pp. 69-70.

The samples collected in the rape kit were preserved and ultimately examined for DNA. A DNA profile was obtained and documented July 29, 2002. N.T. 2/6/14, pp. 87-89. Police Detective Linda Pace obtained a "John Doe" arrest warrant for a person with the DNA profile in the sample obtained from D. R. N.T. 2/6/14, pp. 94-96, 111; Exhibits C-13, C-14.

On July 31, 2009, the DNA obtained from the cervix of D. R. was matched to Defendant Calvin Gadson. N.T. 2/6/14, pp. 89, 98. A search warrant authorizing the taking of a DNA sample from Calvin Gadson was obtained on October 6, 2009. N.T. 2/6/14, pp.103-108; Exhibits C-15, C-16. The DNA from D. R. matched the DNA sample taken from

Defendant Calvin Gadson. N.T. 2/7/14, pp. 16-18, 34. D. R. ı never had consensual

sex with Defendant Calvin Gadson. N.T. 2/5/14, p. 70.

**Discussion**

In his Supplemental Statement of Matters Complained of on Appeal, Defendant raises

three issues: 1) Sufficiency of the evidence; 2) Whether the charges of rape and sexual assault

merge for sentencing; and 3) Whether the John Doe warrant and complaint were insufficient to

toll the statute of limitations.

## 1. The evidence was sufficient to convict defendant of rape, conspiracy to commit rape, robbery and unlawful restraint.

Defendant's "sufficiency" claim seems to have two components: whether the evidence

was sufficient, and whether the verdicts were inconsistent where the jury acquitted defendant of

the firearm charge. We will address them in turn.

### a. Sufficiency of the Evidence.

A claim challenging the sufficiency of the evidence presents a question of law.

*Commonwealth v. Widmer*, 560 Pa. 308, 744 A.2d 745, 751 (2000). We must determine "whether

the evidence is sufficient to prove every element of the crime beyond a reasonable doubt."

*Commonwealth v. Hughes*, 521 Pa. 423, 555 A.2d 1264, 1267 (1989). We "must view evidence

in the light most favorable to the Commonwealth as the verdict winner, and accept as true all

evidence and all reasonable inferences therefrom upon which, if believed, the fact finder

properly could have based its verdict." *Id.*

Our Supreme Court has instructed:

[T]he facts and circumstances established by the Commonwealth need not
preclude every possibility of innocence. Any doubts regarding a defendant's guilt
may be resolved by the fact-finder unless the evidence is so weak and
inconclusive that as a matter of law no probability of fact may be drawn from the
combined circumstances. Moreover, in applying the above test, the entire record

> must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence. *Commonwealth v. Ratsamy*, 594 Pa. 176, 934 A.2d 1233, 1236 n. 2 (2007).

*Commonwealth v. Thomas*, 65 A.3d 939, 943 (Pa. Super. 2013).

Here the evidence was ample to establish each of the crimes of which Defendant was convicted: Rape, Conspiracy to commit Rape, Sexual Assault, Unlawful Restraint, and Robbery.

The testimony of D. R. established oral and vaginal penetration by the penises of both men, at gun point, under threat of injury and death and without her consent. This evidence was sufficient to establish Rape, Conspiracy to commit Rape and Sexual Assault.

Both D. R. and K. B. were ordered from their path at gunpoint, where they were physically accosted and searched, ordered at gunpoint to empty their pockets and possessions (change and beeper) taken, then held on the ground at gunpoint while D. R. was sexually assaulted and raped by both men. They were then ordered, again at gunpoint, to remain face down on the ground while the perpetrators escaped. This testimony was sufficient to establish robbery and unlawful restraint.

Finally, the DNA evidence established that one of the men committing the acts constituting these crimes was Defendant Calvin Gadson. The evidence was clearly sufficient to establish each of the crimes for which he was convicted.

**b. Effect of jury's acquittal of defendant on the charge of possession of a firearm in violation of 18 Pa.C.S. § 6106.**

It is the rule in Pennsylvania that "juries may reach inconsistent verdicts, along with its corollary that [the courts] may not interpret a jury acquittal as a specific factual finding with regard to the evidence." *Commonwealth v. Moore*, 103 A.3d 1240, 1247 (Pa. 2014).

Here, defendant urges that the rape, conspiracy to rape, robbery and unlawful restraint charges should fall because the jury acquitted defendant on the gun charge. Thus, he would

appear to assert, there could have been no use or threat of force.

The Crimes Code defines the charged offence of Firearms not to be carried without a license as follows:

(a)  Offense defined.

(1)  Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106.[3]

The admonition in *Moore* is particularly relevant here, because there is no basis from which to conclude why the jury acquitted on the gun charge.  Here there was extensive cross-examination about the guns, and inconsistent testimony about who had which gun and when.  Thus, the jury might have decided to acquit on the firearms charge because it could not determine which weapon was possessed by Defendant.  Or perhaps the jury concluded that a gun was used, but that it was not concealed.  Likewise, the jury could have concluded that objects which appeared to be firearms were used to compel or place the complainants in fear, thereby establishing those elements of the crimes for which Defendant was convicted, even though the jury could not conclude beyond a reasonable doubt that the objects, which were never recovered or fired, were actually firearms.

A claim similar to that asserted here, with even more persuasive factual support, was presented in *Commonwealth v. Strand*, 347 A.2d 675, 676 (Pa. 1975).  Therein the Supreme Court rejected the invitation to conclude that the defendant's second-degree murder conviction for shooting and killing her victim, could not stand where she was acquitted of all VUFA charges associated with her use of that firearm.

Even without the solid precedent that juries may deliver inconsistent verdicts,

---

3.None of the exceptions in subsection (b) of § 6106are applicable.

Defendant's logic simply does not track. There are numerous reasons why the jury might have acquitted on the firearms charge. Defendant's claimed reason, that the jury determined there was no threat of force or compulsion, is the least likely and is without basis in the record.

## 2. The convictions Rape and Sexual Assault do not merge for sentencing.

Merger is a non-waivable challenge to the legality of the sentence. *Commonwealth v. Pettersen*, 49 A.3d 903 (Pa. Super. 2012).

42 Pa.C.S. § 9765, relating to Merger of sentences, provides:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

In interpreting this language, the Supreme Court has explained:

The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Commonwealth v. Baldwin*, 985 A.2d 830, 833 (Pa. 2009).

The crime of Rape by forcible compulsion, the section under which defendant was convicted, is defined as follows:

(a) Offense defined. -- A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
(1) By forcible compulsion.
(2) By threat of forcible compulsion that would prevent resistance by a person of reasonable resolution.

18 Pa.C.S. § 3121.

The crime of Sexual Assault is defined as:

Except as provided in section 3121 (relating to rape) or 3123 (relating to involuntary deviate sexual intercourse), a person commits a felony of the second degree when that person engages in sexual intercourse or deviate sexual intercourse with a complainant without the complainant's consent.

18 Pa.C.S. § 3124.1.

Here the evidence established that Defendant penetrated the complainant with his penis both orally and vaginally. Clearly the jury could have found that the oral penetration constituted a Sexual assault under § 3124.1 and that the vaginal penetration constituted a Rape under 18 Pa.C.S. § 3121. Because there were two separate criminal acts – the oral and vaginal penetration -- the convictions cannot merge, pursuant to 42 Pa.C.S. § 9765.

### 3. The John Doe Complaint and Warrant tolled the statute of limitations.

This case was assigned to this Court shortly before trial. However, a review of the docket and the document management system does not disclose that a motion to dismiss or other challenged based upon the statute of limitations was ever filed.

Defendant waived his claim that the statute of limitations was not tolled by the John Doe warrant by failing to raise the issue prior to trial. *Commonwealth v. Cruz*, 512 A.2d 1270, 1272 (Pa. Super. 1986), appeal denied 522 A.2d 49 (Pa. 1987).

Moreover, even if the claim were not waived, John Doe warrants identifying the accused by his unique genetic information are valid. *Commonwealth v. Laventure*, 586 Pa. 348, 364, 894 A.2d 109, 119 (Pa. 2006). Accordingly, the statute of limitations was tolled and this claim is without merit.

Accordingly, the judgment of sentence should be affirmed.

By The Court:

Campbell, J.